UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 7 |
| JAMES E. HYNES, JR. and FARAH N. HYNES | : | |
| Debtors | : | Bankruptcy No. 08-15634bf |

_____

| | | |
|---|---|---|
| GOODVILLE MUTUAL CASUALTY COMPANY | : | |
| | : | |
| Plaintiff | : | |
| v. | : | |
| JAMES E. HYNES, JR., FARAH N. HYNES, MATTHEW SNYDER t/a SNYDER SERVICES, and | : | |
| | : | Adversary No. 09-0079 |
| Defendants | : | |

.................................................

MEMORANDUM

.................................................

Presently before me are motions for summary judgment filed by plaintiff

Goodville Mutual Casualty Co. and by defendants James and Farah Hynes "by and

through their Chapter 7 Trustee" Christine Shubert, Esq.  In addition, Goodville has filed

a motion to strike a "statement" filed by defendant Matthew Snyder dated September 18,

2009.  In this statement, defendant Snyder purports to "join in all of the substantive

factual and legal arguments" raised by the chapter 7 trustee.  As will be discussed below,

the issue in this adversary proceeding is whether Goodville has a duty to defend and

indemnify defendant Snyder against claims raised by Mr. and Mrs. Hynes in pending state

court litigation, which litigation is part of the debtors' bankruptcy estate.

I.


A.


For purposes of the parties' cross-motions for summary judgment, many of the facts are undisputed. They follow, in roughly chronological order.

In May 2006, defendant Matthew Snyder, t/a Snyder Services, purchased a "Tradesman Cover Plus" insurance policy from Goodville Mutual Casualty Company. Shubert, ex. R. The policy cover sheet identifies the insured as an individual with a business description of "landscape and carpentry." Id. Coverage was to begin on July 11, 2006 and terminate on July 11, 2007. Id. The policy was purchased by Mr. Snyder through the Hornafius Insurance Agency, Inc. Id.

On or about July 22, 2006, Mr. and Mrs. Hynes entered into an agreement of sale to purchase from Mr. Snyder the real property located at 2119 Cloverleaf Road, Mount Joy, Pennsylvania, for $182,900. Shubert, ex. A. Mr. Snyder was the record owner of the real property and it is undisputed that he had constructed a residence on this realty with the intention of selling it.

At some point after moving into the realty, Mr. and Mrs. Hynes concluded that the property had major structural defects which had not been disclosed to them by Mr. Snyder. By November 28, 2007, the Hyneses had engaged a contractor to estimate repairs and remodeling and they received his report in December 2007, estimating a cost of more than $138,000. Shubert, ex. C.

2

On June 13, 2008, Mr. and Mrs. Hynes commenced a civil action by filing a writ of summons against Mr. Snyder and Mr. Michael Biechler (who had inspected the realty on their behalf prior to transfer of title) in the Pennsylvania Court of Common Pleas of Lancaster County. Shubert, exs. D, I; see generally Pa. R. Civ. P. 1007(1). According to the state court docket entries, this writ was served upon these defendants on July 9, 2008. Shubert, ex. I.

On September 4, 2008, Mr. and Mrs. Hynes filed a joint voluntary petition in bankruptcy under chapter 7. Christine C. Shubert, Esq. became the chapter 7 trustee under 11 U.S.C. §§ 701, 702.

On September 25, 2008, Mr. and Mrs. Hynes filed a complaint asserting one claim of negligence against Mr. Biechler and three counts of negligent misrepresentation, fraud and unfair trade practices against Mr. Snyder. Shubert exs. I, H. Damages were sought in excess of $400,000.[1] On October 7, 2009, the Hyneses dismissed Mr. Biechler as a defendant in this state court civil action. Shubert ex. J. On November 5, 2008, Mr. Snyder filed an answer contesting liability and damages. Attorney Thomas G. Klingensmith filed the answer on his behalf. Shubert, ex. K.

On January 26, 2009, Ms. Shubert's counsel entered an appearance on behalf of the Hyneses in the state court litigation and the Hyneses' attorney withdrew his appearance. Shubert, ex. I.

---

[1] As the debtors' prepetition claims were property of their bankruptcy estate under section 541(a), the chapter 7 trustee, rather than the Hyneses, had the right to prosecute the litigation commenced prepetition by writ of summons. See generally Schafer v. Decision One Mortg. Corp., 2009 WL 1532048, at *3-*4 (E.D. Pa. 2009); Lambert v. Fuller Co., 122 B.R. 243 (E.D. Pa. 1990).

3

On January 28, 2009, Goodville sent a letter to Mr. Snyder, by certified and first class mail, received by Mr. Snyder on January 31, 2009.  Shubert, ex. F.  In this letter, signed by Mr. Michael C. Eby, a Goodville "Sr. Claims Rep," Goodville states, in part, that the letter is:

> to advise [Mr. Snyder] that Goodville will provide you a defense for the Hynes Action.  However, there appear to be grounds for which [insurance] coverage may be denied.  Therefore, Goodville reserves all of its rights under the policy, including the right to disclaim coverage for the following reasons.

Shubert, ex. F, at 2.  This "reservation of rights" letter asserted that the Goodville policy did not cover faulty workmanship, negligent defects, nor intentional or negligent failure to disclose those defects in a home built by Mr. Snyder.  Id.  The Goodville letter ends by repeating that Goodville will defend Mr. Snyder in the Hynes litigation under a reservation of rights and without waiving any of its defenses to claims made under the insurance policy.  Id., at 2-3.

On January 30, 2009, Goodville filed a civil action against Mr. and Mrs. Hynes, Mr. Snyder and Mr. Biechler in the Pennsylvania Court of Common Pleas for Lancaster County.  In this action, Goodville sought a declaratory judgment that it has no duty to defend Mr. Snyder in the Hynes litigation, nor indemnify him for the claims asserted against him by the Hyneses, based upon the language of the insurance policy issued by Goodville in favor of Mr. Snyder effective July 11, 2006.  Shubert, ex. M.

On March 18, 2009, the chapter 7 trustee, through her counsel, removed Goodville's declaratory judgment action to this bankruptcy court pursuant to 28 U.S.C. §

1452(a), and it became the adversary proceeding captioned above.[2]  Shubert, ex. L.

Thereafter, Goodville dismissed Mr. Biechler as a defendant in the removed litigation on

April 17, 2009.  The bankruptcy trustee, acting on behalf of defendants Hynes, filed an

answer with affirmative defenses opposing the declaratory relief sought by Goodville.

Shubert, ex. P.

Defendant Snyder did not file any response to Goodville's complaint;

therefore, on July 20, 2009, Goodville filed a request for entry of default against him

under Fed. R. Bankr. P. 7055 (incorporating Fed. R. Civ. P. 55).  Shubert, ex. N.

The state court action against Mr. Snyder was not removed, and so that

litigation continues in the state court forum.  On May 5, 2009, attorney Klingensmith

withdrew his appearance on behalf of Mr. Snyder in state court and attorney J. Michael

Flanagan entered his appearance.  Shubert, ex. I.  On May 12, 2009, Mr. Snyder, through

his new counsel, moved to amend his answer to the complaint and to join Mr. Biechler as

a third-party defendant and assert cross-claims against him.  Shubert ex. I.  That relief

was granted by the state court on June 12, 2009, and the amended pleadings, including the

---

[2]By virtue of section 323 and Fed. R. Bankr. P. 6009, the trustee has the right to
sue and be sued on behalf of the bankruptcy estate.  Moreover, she "may intervene as the estate's
representative . . . as a plaintiff or defendant in suits pending at the time of bankruptcy. . . ."  3
Collier on Bankruptcy, ¶ 323.01[1] (15th ed. rev. 2009).  Thus, the trustee succeeded to the
interest of the Hyneses in their state court lawsuit against Mr. Snyder.  See generally Martin v.
Monumental Life Ins. Co., 240 F.3d 223, 227 (3d Cir. 2001) (after a party filed a chapter 7
petition, the trustee was substituted as the proper party and the caption amended).
        Technically, Goodville should have named the trustee rather than the Hyneses as
defendants in its state court declaratory judgment action.  But Goodville was not a creditor of the
Hyneses and probably had no notice of their bankruptcy filing.  Similarly, the trustee should have
sought to be substituted as defendant for the Hyneses in this proceeding.  See In re Jennings, 378
B.R. 678 (Bankr. M.D. Fla. 2006).  Goodville and the trustee are acting as though the trustee did
so substitute and is a defendant.

cross-claims were filed on July 1, 2009.  Shubert, ex. I.  Mr. Biechler then moved to

dismiss those cross-claims.  Id.[3]

Finally, after Goodville sought the entry of default against Mr. Snyder in

this adversary proceeding, and after the trustee's motion for summary judgment was filed,

Mr. Snyder signed a statement in which he purports to "join in all the substantive factual

and legal arguments" made by the trustee in this adversary proceeding.  There is no

dispute that this statement was prepared by the trustee's counsel for Mr. Snyder's

signature.  Moreover, the trustee's counsel acknowledged at oral argument that this

statement was not intended by Mr. Snyder to assign his rights, if any, under the Goodville

policy to the trustee or to the Hyneses.


B.


Although many facts are not in dispute, the parties contest the date that

Goodville first learned of the Hyneses' claims against Mr. Snyder.

In response to the trustee's summary judgment motion, Goodville attaches

an affidavit of Charles F. Kidhardt, identified as a "claims supervisor."  Mr. Kidhardt

swears that Goodville "first received notice" of the Hynes claims on November 4, 2008.

This notice came from Mr. Dennis Zubler of the Hornafius Insurance Agency, and

informed Goodville of the pending state court lawsuit and of the Hyneses' intention to

---

[3]The summary judgment record does not reveal the outcome of that dismissal
request.

6

enter default because Mr. Snyder had failed to answer the state court complaint.

Goodville, ex. B.[4]

Trustee Shubert contends that Goodville learned of the Hyneses' claims no

later than August 2008.  In support thereof she attaches a portion of a deposition of Mr.

Snyder that occurred in connection with the state court litigation on August 5, 2009.  It

was agreed to by all parties that this deposition could be used in this declaratory judgment

action.  Shubert, ex. E, at 11-12.

When Mr. Snyder was questioned about notification of the Hyneses' claims

to Goodville, his deposition responses were as follows:

> Q. When did you first give notice to Goodville that there was
> a problem with the property?
>
> A. If I remember right, I called my thing in E-town there.
> What am I looking for?
>
> MR. FLANAGAN [Snyder's counsel]: Insurance agent.
>
> THE WITNESS: Yeah. I called my insurance agent to see if
> they could do -- in early '08 I think.
>
> BY MR. MORICONI [Shubert's counsel]:
>
> Q. Do you remember any of the –
>
> A. I don't.
>
> Q. Was it before March of 2008?
>
> A. Honestly, –

---

[4]The state court dockets reflect an entry on October 27, 2008 that reads:
"Important Notice . . . to Matthew Snyder" filed by counsel for the Hyneses and certified as
having been served on that date.  The content of the notice is not explained.  Pa. R. Civ. P. 237.1
requires that a plaintiff provide 10-days notice to a defendant who has not responded to a
complaint before a judgment by default can be entered.

Q. Before June July 2008? Before June 2008?

A. I don't know when I called them. I went in there and –

Q. It's whenever it is.

A. I don't know. And I got a response back.  But that wasn't until. –

Q. You are not sure when?

A. I am not exactly sure.

Q. You sent them notice that there might be a problem with the property?

A. I know it was after I got the first – all of this stuff going on.

Q. It was after you got the Writ of Summons in this case in the underlying Lancaster County case?

A. I am not sure.

Q. You said it was early '08 you might have given notice to Goodville; is that fair to say?

A. I went in there and said something to my –

Q. Insurance agent?

A. – insurance agent. That's what I did.

Q. At some point early in 2008?

A. Earlier than this.

Q. What are you referring to by this?

A. 11/20 is the 11th month of '08 is when I sent – or my lawyer sent them something.

Q. Okay. So the 11th month of 2008 is when your lawyer sent something.

***

Q. Let me make this very simple.  I want to know when Goodville first knew that there was a problem with 2119 Cloverleaf, whether that was by Complaint, Writ of Summons, or you calling up and saying, I got these purchasers

8

who are having problems with the house, Goodville, I want
you to know.

Do you remember when they first knew about any problem –

A. I never said that.

Q.  Did you speak to somebody?

A. I spoke to somebody, but I do not remember the dates. But
I told them I was getting – the dude was going after –

Q. Was going to bring suit?

A. Yes.

Q. Did you tell them that before you got sued?

A. I think so, yes.  I think so; but dates, I do not know offhand.

Q. But you are relatively certain it was before you got served
with a Complaint?  Or was it around that same time?

A. It all happened all at once. I am not sure.

Q Was it before –

A. I don't know.

Q. – September of 2008?

A. Yeah.

Q. Fair enough.

A. Yes.

Q. They were on notice before September of 2008, that's your testimony?

A. I called and said something to them, yep. I didn't. My insurance.

Q. You told your insurance agent?

A. I went in and talked to them.  I went in and talked to my
insurance.  I said, here is what is going on.  What can you
guys do for me?  I have all of this freakin' insurance.

9

Q. Right.

A. And, honestly, they talked to them.

Q. Okay. And that was –

A. Date-wise, I am not.

Q. Fair enough.  I am not going to pin you down for a date.  I am not trying to back you into a corner.

A. I don't know.

Q. I understand that.  I want to make sure if it's fair to say if it was before, for instance, September of 2008?

A. Yes.

Q. Was it before August of 2008?

A. For the life of me, I would say yes, but –

Q. August or September, to your best approximation?

A. Or before.

Q. Or before that?

A. Time-wise, I am not sure, but yes.

Q. I am giving you approximations.  I am approximating as much as you are.

MR. FLANAGAN: For clarity, are you talking about you spoke with Hornafius?

THE WITNESS: Yes.

BY MR. MORICONI:

Q. You spoke with Hornafius in August or September 2008?

A. Yes.

Q. Your understanding is that Hornafius was the person to go to to speak with Goodville?

A. That's my agent.

Q. Your understanding was that Hornafius had a direct relationship with Goodville Mutual Casualty Company?

A. They wouldn't sell their policy, would? [sic] They. [sic]

Q. By going to Hornafius, you reasonably thought that they would communicate this to Goodville; is that right?

A. Yes.

Q. And Goodville didn't really respond to your claim until January 28th, 2009; is that right?

A. That's when I got this paper.

Shubert ex. E, at 87-96.

Ms. Shubert interprets this testimony by Mr. Snyder as swearing that he notified Hornafius of the Hyneses' claims against him no later than August 2008. Goodville construes this testimony differently, arguing that Mr. Snyder was so uncertain as to the date he mentioned the litigation to Hornafius that it does not undermine Goodville's sworn statement that the insurer was first notified by Hornafius in early November 2008. Implicitly Goodville suggests that Mr. Snyder first notified Hornafius immediately after the date that Mr. Snyder received notice of the Hyneses' intention to take a default judgment against him in state court.

The other factual dispute involves the role of the Hornafius Insurance Agency in receiving such notice from Mr. Snyder. Although Mr. Snyder referred to Hornafius as his agent, trustee Shubert contends that there are sufficient inferences to establish that Hornafius was acting as the agent of Goodville for purposes of notice of the Hyneses' claims. Goodville disputes this, contending that no information is of record in connection with these cross-motions for summary judgment beyond the location of that

11

insurance agency, its role in placing the policy for Mr. Snyder, and the fact that Hornafius

is noted on the declarations page of the policy.  Shubert, ex. R.  The policy itself has a

provision requiring the insured to provide timely notice in certain instances to the

company or its agent, but the policy does not identify any such agents.  Id.


## II.


    The purpose of summary judgment is to avoid the expense and delay of an

unnecessary trial because no material facts are in dispute and one of the parties is entitled

to prevail on the merits.  See, e.g., Goodman v. Mead Johnson & Co., 534 F.2d 566, 573

(3d Cir. 1976), cert. denied, 429 U.S. 1038 (1977).  In general, the standard for entry of

summary judgment under Federal Rule of Civil Procedure 56, incorporated into

bankruptcy adversary proceedings by Federal Rule of Bankruptcy Procedure 7056, is well

established.  As the Third Circuit Court of Appeals explained:

> Summary judgment is appropriate when the moving party is
> entitled to judgment as a matter of law and there is no genuine
> dispute of material fact. . . .  In order to defeat "a properly
> supported summary judgment motion, the party opposing it
> must present sufficient evidence for a reasonable jury to find
> in its favor."  Groman v. Township of Manalapan, 47 F.3d
> 628, 633 (3d Cir. 1995) (citing Anderson v. Liberty Lobby,
> Inc., 477 U.S. 242, 250-52, 106 S.Ct. 2505, 2511-12, 91
> L.Ed.2d 202 (1986)).  In essence, the non-moving party must
> demonstrate a dispute over facts that might affect the outcome
> of the suit.  Id.  Moreover, in reviewing the record, we must
> give the non-moving party the benefit of all reasonable
> inferences. . . .

Hampton v. Borough of Tinton Falls Police Dept., 98 F.3d 107, 112 (3d Cir. 1996).

The application of these general principles is affected by the allocation of the evidentiary burden of persuasion were the dispute to proceed to trial. That is, a trial court's approach to summary judgment is dependent upon whether the party seeking summary judgment would have the burden of persuasion at trial. See generally 11 Moore's Federal Practice 3d, §§ 56.03[4], 56.13[3] (2006). This approach was well summarized in Adams v. Consolidated Rail Corp., 1994 WL 383633, at *1-*2 (E.D. Pa. 1994):

> The Supreme Court articulated the allocation of burdens between a moving and nonmoving party in a motion for summary judgment in Celotex Corp. v. Catrett, 477 U.S. 317 (1986). The Court held that where the movant is the defendant, or the party without the burden of proof on the underlying claim, the movant still has the initial burden of showing the court the absence of a genuine issue of material fact, but that this does not require the movant to support the motion with affidavits or other materials that negated the opponent's claim. Id. at 323. In contrast, where, as here, "the party moving for summary judgment is the plaintiff, or the party who bears the burden of proof at trial, the standard is more stringent." National State Bank v. Federal Reserve Bank [of New York], 979 F.2d 1579, 1582 (3d Cir.1992). To sustain its initial burden under such circumstances, the movant must:
>
> > "support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party."
>
> Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). . . . If the movant makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, comes forward with significant, probative evidence demonstrating the existence of a triable issue of fact. . . .

(citations omitted); accord In re White, 243 B.R. 498, 501 n.4 (Bankr. N.D. Ala. 1999).


                                        C.


        In deciding whether either party is entitled to summary judgment, I note that

they both agree that Pennsylvania substantive law governs this removed adversary

proceeding.  See, e.g., In re Jarjisian, 314 B.R. 318, 325 (Bankr. E.D. Pa. 2004).  By

virtue of Fed. R. Bankr. P. 9027(g), however, the bankruptcy procedural rules apply.[5]

        In addition, the trustee conceded in open court at oral argument that the

Goodville insurance policy does not cover the Hyneses' claims against Mr. Snyder as

alleged in the state court complaint.  In other words, although the trustee's opposition to

Goodville's summary judgment motion did dispute the scope of the insurance policy and

argued that the Hyneses' claims fell within the policy's ambit, the trustee now

acknowledges that the nature of the Hyneses' asserted claims against Mr. Snyder fall

outside the scope of his liability policy.

_____

        [5]Of course, the issue of subject matter jurisdiction is defined by federal law.
Section 1452(a) of title 28 authorizes removal to the district court of claims or causes of action,
but only "if such district court has jurisdiction of such claim or cause of action under [28 U.S.C.]
section 1334 . . . ."  Accordingly, if there is no bankruptcy subject matter jurisdiction to hear a
removed proceeding, the removal notice is defective and the civil action must be remanded as
never properly removed.  See, e.g., Textron Inv. Management Co., Inc. v. Struthers
Thermo-Flood Corp., 169 B.R. 206, 211 (D. Kan. 1994); In re Hotel Mt. Lassen, Inc., 207 B.R.
935 (Bankr. E.D. Cal. 1997); see also Things Remembered, Inc. v. Petrarca, 516 U.S. 124
(1995).
        As the outcome of this proceeding could conceivably affect the assets available
for distribution to the Hyneses' creditors in this bankruptcy case, there is no dispute that this
proceeding falls within the scope of section 1334 jurisdiction.

That being so, the only ground that the trustee now asserts for holding

Goodville liable to defend Mr. Snyder in the pending state court litigation, and to

indemnify him if a monetary judgment is rendered on those claims, is estoppel.  That legal

issue will be discussed in detail below.  However, for purposes of summary judgment,

Pennsylvania law places the evidentiary burden to establish estoppel on the party

asserting it.  See, e.g., Blofsen v. Cutaiar, 460 Pa. 411, 417 (1975) ("It is well-established,

however, that the burden rests on the party asserting the estoppel to establish such

estoppel by clear, precise and unequivocal evidence."); Pizzini v. American Intern.

Specialty Lines Ins. Co., 107 Fed. Appx. 266, 268 (3d Cir. 2004) (non-precedential);

Transportation Ins. Co. v. C.F. Bordo, Inc., 2009 WL 839366, at *5 (M.D. Pa. 2009); see

also Insurance Co. of North America v. McCleave, 462 F.2d 587 (3d Cir. 1972).

Accordingly, in applying the above-mentioned standard to these cross-

motions for summary judgment, "[the court must] view the underlying facts and all

reasonable inferences therefrom in the light most favorable to the party opposing the

motion."  Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995); see also

Helen L. v. DiDario, 46 F.3d 325, 329 (3d Cir.), cert. denied sub nom. Pennsylvania

Secretary of Public Welfare v. Idell S., 516 U.S. 813 (1995); Valhal Corp. v. Sullivan

Associates, Inc., 44 F.3d 195, 200 (3d Cir. 1995); Goodman v. Mead Johnson & Co., 534

F.2d at 573.  Moreover, the moving party bears the burden of proving that no genuine

issue of material fact is in dispute.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 586 n.10 (1986).  Once the movant has carried its initial burden,

however, the nonmoving party "must come forward with 'specific facts showing that

there is a genuine issue for trial.'" Id. at 587 (quoting Fed. R. Civ. P. 56(e)).  As

explained by the Third Circuit:

> At the summary judgment stage of proceedings, if the movant
> —in this case the Defendants—can point to the absence of
> any factual support for one of [the] essential elements [of the
> complaint], then the non-movant, bearing the burden of
> persuasion at trial, must introduce specific facts showing a
> need for trial, pursuant to Fed. R. Civ. P. 56(e).  See Celotex,
> 477 U.S. at 322-24, 106 S. Ct. 2548.  If the non-moving party
> fails to go beyond conclusory allegations in its pleadings and
> to produce specific facts indicating that there is a genuine
> issue for trial, summary judgment will be granted in favor of
> the moving party.

Annulli v. Panikkar, 200 F.3d 189, 198-99 (3d Cir. 1999) (overruled on other grounds by

Rotella v. Wood, 528 U.S. 549 (2000)) (citations omitted).

Therefore, by conceding that Mr. Snyder's insurance policy with Goodville

did not cover the claims asserted against him by Mr. and Mrs. Hynes, the chapter 7

trustee, in opposing Goodville's demand for summary judgment, must come forward with

specific facts that, if proven, would allow her to prevail at trial on her estoppel defense.

If not, then summary judgment must be entered on behalf of the insurer.  See, e.g., Pizzini

v. American International Specialty Lines Insurance Co., 107 Fed. Appx. 266, 268 (3d

Cir. 2004) (non-precedential); Continental Insurance Co. v. Kovach, 2007 WL 2343771

(W.D. Pa. 2007); see also Nationwide Mutual Insurance Co. v. Nixon, 453 Pa. Super. 70

(1996); Phico Insurance Co. v. Presbyterian Medical Services Corp., 444 Pa. Super. 221

(1995).  To prevail on her own motion for summary judgment, the trustee must

demonstrate that the undisputed facts demonstrate that estoppel is appropriate, with all

reasonable inferences construed in favor of Goodville.  See generally Beckwith

Machinery Co. v. Travelers Indemnity Co. 638 F.Supp. 1179, 1188 (W.D. Pa. 1986);

16

<u>Aetna Life and Casualty Co. v. McCabe</u>, 556 F. Supp. 1342, 1353-55 (E. D. Pa. 1983)

(summary judgment granted against insurer when the undisputed facts demonstrated its

failure to timely and adequately reserve its rights).

      Before applying Pennsylvania law to the summary judgment record made

by the parties, I also note that Goodville and the chapter 7 trustee have filed a stipulation,

wherein they consent to the entry of a final judgment in this bankruptcy court and waive

any right to trial by jury.  Accordingly, if either party is entitled to summary judgment,

such a final order can be entered in this bankruptcy forum.


III.


A.


      In Pennsylvania, the use of a "reservation of rights" letter stems from this

premise:

> [I]t is the general rule that an insurance company may not
> undertake the defense of a suit which entails the defendant's
> relinquishing to the company the management of the case and
> then turn around and deny liability under its policy.  As stated
> in <u>Basoco v. Just</u>, 154 Pa. Super. 294, 297 . . . (1944), "When
> (the insurance company) substitute(s) itself and its judgment
> for that of the defendant, both plaintiff and defendant have a
> right to insist that the final judgment establishes the liability
> and debt of the company to the assured."

<u>Brugnoli v. United National Insurance Co.</u>, 284 Pa. Super. 511, 516-517 ( 1981); <u>see</u>, <u>e.g.</u>,

<u>Draft Systems, Inc. v. Alspach</u>, 756 F.2d 293, 296 (3d Cir. 1985).  "The undertaking to

defend is of no value and may be of great danger to an insured where the insured

17

abandons all control of the suit to the insurer without a guaranty that whatever liability is established will be discharged."  14A <u>Summary of Pennsylvania Jurisprudence</u>, § 18.27 (2d ed 2009); <u>see</u> <u>also</u> <u>Malley v. American Indemnity Corporation</u>, 297 Pa. 216, 222 (1929).  Indeed, as well expressed by the Arizona Court of Appeals:

> The normal liability policy imposes upon an insurer several distinct and separate duties, one of which is the duty to defend. . . .  An insured is entitled to know early in the litigation process whether the insurer intends to honor that duty in order that the insured may take steps to defend himself. . . .  If in fact the insurer undertakes that defense the insured may reasonably rely upon the non-existence of policy defenses.  To hold otherwise would allow the insurer to conduct the defense of the action without the knowledge of the insured that a conflict of interest exists between itself and the insurer.  The conflict is that the insurer retains a policy defense which would relieve the insurer of all liability while simultaneously depriving the insured of the right to conduct his own defense. . . .  It is the reliance of the insured upon the insurer's handling of the defense and the subsequent prejudice which gives rise to an estoppel in the first instance against the insurer from raising policy defenses.

<u>Equity General Ins. Co., Inc. v. C & A Realty Co., Inc.</u>, 148 Ariz. 515, 518, (Ariz. App. 1985); <u>see</u> <u>also</u> <u>Rogovitz v. Guiras</u>, 2 Phila. Co. Rptr. 193, 197 (C.P. Phila. Co. 1979) ("An insurer, because of a substantial and obvious conflict of interest, breaches its fiduciary duty if it controls the insured's defense while intending to disclaim liability under the insurance contract without notice to the insured.").

Pennsylvania (and other jurisdictions) recognizes, however, that an insurer may not know at the outset of litigation whether an insured has a valid indemnity claim under the relevant insurance policy, and so run some risk if it declines participation in the insured's defense:

> If coverage is not determined at the time the claimant files suit, both the insured and the carrier are at a disadvantage.  If

18

> the insurance company fails to provide a defense, the claimant
> may enter a default judgment against the insured.  If,
> however, the company affords representation without some
> understanding with the insured, the carrier may later be
> estopped to assert an otherwise valid coverage defense.  See
> Appleman, §§ 4689 & 4694.  From the insured's standpoint,
> the prospect of a default judgment is unacceptable, as is the
> perhaps unnecessary expense of retaining competent counsel
> on short notice.
>
> To accommodate the concerns of both the insured and the
> carrier, the practice of using a non-waiver agreement has
> developed.  See Appleman, § 4689; M. Rhodes, Couch on
> Insurance § 51:88 (1982).  Through this device, the carrier
> informs the insured of various factors which cast doubt on
> coverage, reserves the right to assert those matters at a later
> date, but agrees to provide a defense in the interim.  This
> practice not only serves the interests of the parties to the
> insurance policy but is helpful to claimants and the courts as
> well because the claimant's tort litigation may proceed
> expeditiously.

Draft Systems, Inc. v. Alspach, 756 F.2d at 296.  Perhaps the leading Pennsylvania case

to articulate this balance of interests via an insurer's reservation of rights in conjunction

with defending the insured is Brugnoli v. United National Insurance Co., wherein the

intermediate state appellate court observed:

> It is generally recognized that
>
> [a] liability insurer will not be estopped to set up the defense
> that the insured's loss was not covered by the insurance
> policy, notwithstanding the insurer's participation in the
> defense of an action against the insured, if the insurer gives
> timely notice to the insured that it has not waived the benefit
> of its defense under the policy.  However, a reservation of
> rights in this respect, to be effective, must be communicated
> to the insured.  It must fairly inform the insured of the
> insurer's position and must be timely, although delay in
> giving notice will be excused where it is traceable to the
> insurer's lack of actual or constructive knowledge of the
> available defense.

19

284 Pa. Super. at 518 (quoting 14 G. Couch, <u>Cyclopedia of Insurance Law</u> § 51:83 (2d

ed. 1965)); <u>see</u>, <u>e.g.</u>, <u>Gross v. Kubel</u>, 315 Pa. 396, 401 (1934); <u>Transportation Insurance</u>

<u>Co. v. C.F. Bordo, Inc.</u>, 2009 WL 839366, at *5 (M.D. Pa. 2009); <u>Titan Indemnity Co. v.</u>

<u>Cameron</u>, 2002 WL 242346, at *2 (E.D. Pa. 2002);  27 <u>P.L.E.</u> § 224 (2d ed. 2002); 14A

<u>Summary of Pennsylvania Jurisprudence</u>, § 18.29 (2009).

　　　　　Here, there is no dispute that Goodville sent a reservation of rights letter.

Nor does the trustee argue that this letter failed to fairly inform Mr. Snyder of Goodville's

position.  Instead, Ms. Shubert contends that this letter, sent on January 28, 2009, was

untimely and thus Goodville is estopped from denying coverage to Mr. Snyder.


                                        B.


　　　　　Before addressing the issue of timeliness, I note that Goodville asserts that

this estoppel contention can only be raised by the insured, Mr. Snyder.  But Mr. Snyder,

as noted above, defaulted by failing to file a response to Goodville's declaratory judgment

complaint.  In other words, Goodville maintains that under Pennsylvania law a claimant

of an insured has no standing to assert estoppel against an insurer, and its insured is now

precluded from doing so.[6]

---

　　　　　[6]When an insured has assigned all of his rights to a claimant, courts appear to
recognize the claimant's standing to raise an estoppel defense.  <u>See generally</u> <u>Pizzini v. American</u>
<u>International Specialty Lines Insurance Co.</u>, 107 Fed. Appx. 266, 267 (3d Cir. 2004) (estoppel
issued raised by claimants alleging that they were assignees of the insured); <u>Merchants Mutual</u>
<u>Insurance Co. v. Artis</u>, 907 F. Supp. 886, 889 (E.D. Pa. 1995) (same); <u>see</u> <u>also</u> <u>Pueblo Santa Fe</u>
<u>Townhomes Owners' Ass'n v. Transcontinental Insurance Co.</u>, 218 Ariz. 13, 19-20 (Ariz. App.
2008).  In this proceeding, however, the trustee acknowledged that she received no such
assignment from Mr. Snyder.

Neither party refers to decisions under Pennsylvania law that decide this precise issue. Goodville's position, though, is supported inferentially by the concern of prejudice to the insured, mentioned earlier, that may occur if the insurer defends without asserting a reservation of rights. The interests of the claimant against the insured are not implicated in the potential conflict of interest if an insurer assumes a defense on the part of its insured and much later is able to disclaim coverage.[7] Moreover, the reservation of rights letter here is addressed only to the insured, not to the claimant, thereby suggesting that only the rights of the former are entitled to protection via estoppel.

Nonetheless, the issue of a claimant's right to assert estoppel against an insurer under Pennsylvania law is unclear for a number of reasons.

Upon sending a reservation of rights letter, insurers in Pennsylvania may bring a declaratory judgment action (as Goodville did here) to determine whether they have any duty to defend and/or indemnify their insureds. See, e.g., Nationwide Mutual Insurance Co. v. Nixon, 453 Pa. Super. 70, 73 (1996). In Vale Chemical Co. v. Hartford Accident and Indemnity Co., 512 Pa. 290 (1986), the Pennsylvania Supreme Court held, under state law, that a claimant of the insured (along with the insured) is an indispensable party to the declaratory judgment action.

If the claimant is indispensable to the adjudication of the declaration of the insurer's obligations to its insured, then arguably the claimant is entitled to raise all defenses, including estoppel, to defeat the relief sought by the insurer. For example, in Wasilko v. Home Mutual Casualty Co., 210 Pa. Super. 322 (1967), the state appellate

---

[7]Indeed, the trustee appears to recognize that the basis for estopping an insurer from denying liability coverage is to protect the interests of the insured. See Trustee's Memorandum in Support of Summary Judgment, at 19.

court adjudicated an estoppel issue raised by claimants who previously had obtained a judgment against the insured.

I appreciate that in Liberty Mutual Insurance Co. v. Treesdale, Inc., 419 F.3d 216, 229 (3d Cir. 2005), the Third Circuit Court of Appeals instructed that the Vale decision involved an interpretation of Pennsylvania procedural law and state court jurisdiction, and thus need not be followed by federal courts in diversity cases.  Moreover, upon removal of a state court case to bankruptcy court, jurisdictional issues are a matter of federal law, as are procedural issues.  See Fed. R. Bankr. P. 9027(g).  Nonetheless, the Treesdale court, in considering a declaratory judgment action between an insurer and its insured brought in federal court, implied in distinguishing New Hampshire Insurance Co. v. Greaves, 110 F.R.D. 549 (D.R.I. 1986), that a claimant may have a right to intervene in federal litigation when the insured is insolvent and thus would be unable to pay any adverse judgment absent such insurance.  Id., at 226.  Here, the trustee maintains that Mr. Snyder is insolvent.

Futhermore, Pa. R. Civ. P. 4003.2 permits a tort plaintiff to obtain pre-trial discovery from a defendant regarding the scope of insurance coverage.  The purpose behind permitting such pre-judgment discovery, see Szarmack v. Welch, 456 Pa. 293 (1974), suggests that the issuance and timing of a reservation of rights letter may be of recognizable importance to claimants as well as to insureds.[8]

Two other factors further complicate the standing issue in this adversary proceeding.

---

[8]As will be discussed, there is no record of discovery regarding the scope of insurance coverage here.

The right of a claimant to raise the estoppel defense, if such a right exists, may only be derivative of the right held by the insured.  In this proceeding, defendant Snyder never responded to Goodville's complaint and the latter sought the entry of default under Fed. R. Bankr. P. 7055.  Rule 7055 incorporates Fed. R. Civ. P. 55, governing defaults.  Under Rule 55, upon a showing that an answer was not timely filed, the clerk must enter default.  See Orange Theatre Corp. v. Rayherstz Amusement Corp., 130 F.2d 185 (3d Cir. 1942) (when the defendant has failed to file a timely responsive pleading, the entry of default under Rule 55 is ministerial).  Mr. Snyder's default may thus deprive the trustee of any such derivative standing.

In an attempt to finesse this issue, the trustee obtained Mr. Snyder's signature on a document purporting to adopt the trustee's estoppel assertion.[9]  However, the Hyneses have not obtained a judgment against Mr. Snyder nor an assignment of all of his rights against Goodville.  Thus, the effect of Mr. Snyder's statement of support is debatable.[10]

In addition, under Pennsylvania law, a successful assertion of estoppel requires a showing of prejudice by the party asserting it.  See, e.g., Continental Insurance Co. v. Kovach, 2007 WL 2343771, at *8 (W.D. Pa. 2007); Mendel v. Home Insurance

---

[9]Goodville contends that Mr. Snyder's statement goes beyond the estoppel issue and contains language that may concede the trustee's state law claims against him.  Goodville argues that it was improper for trustee's counsel to have approached Mr. Snyder directly, bypassing Mr. Snyder's state court counsel.  In response, the trustee's counsel asserts that the statement was not intended to undermine Mr. Snyder's state court defenses and that Mr. Snyder's counsel was consulted.  I leave the issue of the effect of this statement, if any, upon the state court litigation for the state court to consider.

[10]It is also debatable whether, by virtue of his default, Mr. Snyder had standing to file a pleading in this case, if this statement can be construed as such.

Co., 806 F. Supp. 1206, 1215 (E.D. Pa. 1992).  In United Nat. Specialty Ins. Co. v.

Gunboat, Inc., 2006 WL 2627713, at *3 (Pa. Com. Pl. 2006), a state court trial judge

assumed, without deciding, that prejudice to a claimant, rather than to the insured, can

serve as grounds to estop an insurer:

> Anderson [claimant] does not claim that Gunboat [insured]
> was prejudiced in any way by the timing of the second
> reservations of rights letter.  Anderson argues that he, rather
> than Gunboat, was prejudiced by UNSIC's [insurer] second
> reservation of rights letter because he submitted to an
> Independent Medical Examination ("IME") after the
> discovery deadline had passed and he expended $30,000 in
> prosecuting the underlying action.  Even if the court were to
> deem prejudice to the party who obtained a substantial verdict
> a factor, in this case Anderson has not demonstrated any
> prejudice by UNSIC's reservation of rights except for
> UNSIC's legitimate refusal to pay.

(footnote omitted); see also Wasilko v. Home Mutual Insurance Co., 210 Pa. Super. at

329 (discussing estoppel in the context of prejudice to claimants).  Here, the bankruptcy

trustee argues that prejudice arose both as to Mr. Snyder and the Hyneses from

Goodville's alleged delay in issuing its reservation of rights letter.  If a claimant has

standing to assert estoppel against an insurer based upon prejudice to the claimant, then

Mr. Snyder's default would not be dispositive.

Given the unsettled nature of Pennsylvania law on the standing issue, for

purposes of determining these cross-motions for summary judgment I shall assume,

without deciding, that the trustee has standing to raise estoppel and that the prejudice

from an untimely reservation of rights letter may arise to either Mr. Snyder or the

Hyneses.  See Continental Insurance Co. v. Kovach, 2007 WL 2343771, at *9 (W.D. Pa.

2007) (court declines to address the standing of the claimant of the insured to raise

estoppel).  I do so because, as will be detailed below, the trustee has not met her burden

24

either to demonstrate that grounds for estoppel exist on this record, or that the issue should be preserved for trial.

IV.

A.

The trustee's initial argument is that Goodville's reservation of rights letter is conclusively untimely, because it was allegedly sent in violation of the Pennsylvania Administrative Code governing unfair insurance practices.  Specifically, Ms. Shubert relies upon 31 Pa. Code § 146.6, which states:

> Every insurer shall complete investigation of a claim within
> 30 days after notification of claim, unless the investigation
> cannot reasonably be completed within the time.  If the
> investigation cannot be completed within 30 days, and every
> 45 days thereafter, the insurer shall provide the claimant with
> a reasonable written explanation for the delay and state when
> a decision on the claim may be expected.

The trustee contends in this proceeding that this administrative regulation establishes an enforceable 30-day deadline for the issuance of all insurer reservation of rights letters, unless there is a written explanation for the delay.  As there was no such explanation, the trustee maintains that even if Goodville first learned of the Hyneses' claim in November 2008, as it asserts, its January 28, 2009 letter is untimely and Goodville should be estopped from denying coverage to Mr. Snyder.

For the following reasons, I find the trustee's contention unpersuasive.

25

First, this administrative provision is part of Chapter 146 of the

Pennsylvania Administrative Code.  Section 146.1 explains the purpose of this code

chapter as follows:

> This chapter defines certain minimum standards which, if
> violated with a frequency that indicates a general business
> practice, will be deemed to constitute unfair claims settlement
> practices.

Therefore, whether an insurer is committing an unfair practice is not dependent upon a

single violation of the regulations, such as an improper reservation of rights letter, but

upon the frequency of such violations.

Moreover, the regulations themselves are intended to be enforced by the

Pennslyvania Insurance Commissioner, see generally D'Ambrosio v. Pennsylvania Nat.

Mut. Cas. Ins. Co., 494 Pa. 501 (1981), and therefore they create no private cause of

action.  See Smith v. Nationwide Mutual Fire Insurance Co., 935 F. Supp. 616, 619-20

(W.D. Pa. 1996).

Indeed, although these insurance regulations were adopted in 1978, the

trustee cites no decision holding that a reservation of rights letter sent more than 30 days

after notification of a claim was untimely because it violated 31 Pa. Code § 146.6.  On the

contrary, a number of courts applying Pennsylvania law after 1978 have held that no

particular delay by an insurer in sending a reservation of rights letter presumptively gives

rise to estoppel:

> Pennsylvania courts have "refused to apply a strict waiver
> theory or a theory of presumptive prejudice."  Mendel v.
> Home Ins. Co., 806 F. Supp. 1206, 1215 (E.D. Pa. 1992)
> (holding that a delay of nearly four years between the date of
> filing of the complaint and issuance of the reservation of
> rights letter did not conclusively establish prejudice).  C.F.
> Bordo argues that a two and a half year delay in TIC issuing a

26

> reservation of rights letter is presumptively prejudicial.
> Prejudice to the insured, however, will not be presumed nor
> may an insured "expand the coverage for which it paid
> through waiver." Rock-Epstein v. Allstate Ins. Co., Civ. A.
> No. 07-2917, 2008 WL 4425059, at *4 (E.D. Pa. 2008) (citing
> Consol. Rail Corp. v. Hartford Accident & Indem. Co., 676
> F.Supp. 82, 85 (E.D. Pa. 1987)). Pennsylvania courts thus
> impose estoppel "only when there is actual prejudice, that is,
> when the failure to assert all possible defenses causes the
> insured to act to his detriment in reliance thereon." Id.

Transportation Ins. Co. v. C.F. Bordo, Inc., 2009 WL 839366, at *6 (M.D. Pa. 2009).

For example, in Rector, Wardens and Vestryman of St. Peter's Church in

City of Philadelphia v. American National Fire Ins. Co., 2002 WL 59333 (E.D. Pa. 2002),

an insurer was found to have timely issued an effective reservation of rights more than

three months after notification of the claim.[11]  In United Nat. Specialty Ins. Co. v.

Gunboat, Inc., 2006 WL 2627713, at *3 (Pa. Com. Pl. 2006), a seven month delay in

notification was held to be timely.[12]  Also, in Brugnoli v. United National Insurance Co.,

284 Pa. Super. at 514, the insurer sent a reservation of rights letter four months after the

insurer was given notice of the service of a writ of summons upon the insured and one

week after service of a complaint.  This conduct was held to be timely.  Id., at 519.

Accordingly, Goodville is not estopped from denying coverage to Mr.

Snyder based upon 31 Pa. Code § 146.6.

---

[11]Notice to the insurer had been provided "seven days after commencement of the
underlying lawsuit." Id., 2002 WL 59333, at *2. The underlying lawsuit was filed on March 11,
1999. Id., 2002 WL 59333, at *1. The insurer sent its reservation of rights notice on June 25,
1999. Id., 2002 WL 59333, at *2.

[12]The trustee, nonetheless, cites to this state court decision in support of her
estoppel argument.

B.


Alternatively, the trustee contends that Goodville had notice of the

Hyneses' claims against Mr. Snyder in August 2008 and waited until January 28, 2009 to

send a reservation of rights letter.  The trustee contends that this purported five-month

delay was prejudicial.  As mentioned earlier, Goodville disputes its notification date.

Furthermore, a component of the trustee's contention is that notice given by Mr. Snyder

to the Hornafius agency is the equivalent of notice to Goodville.  Goodville responds that

there is no basis for treating Hornafius as its agent and thus its assertion of first receiving

notice in November 2008 is unrebutted.  Goodville also maintains that even if it had

received notice in August 2008, no prejudice has been demonstrated to either Mr. Snyder

or the Hyneses by receipt of a January 2009 reservation of rights notice.

I shall consider both contentions, without deciding any factual disputes.

First, under Pennsylvania law an insurance broker is not always treated as

an agent of an insurer, even though the broker may obtain the policy for the insured.  As

explained by the Pennsylvania Supreme Court almost forty years ago:

> On the basis of this testimony, we agree with the trial court
> that the case comes squarely within the law enunciated in
> Taylor v. Liverpool & L & G Ins. Co., 68 Pa. Super. 302, 304
> (1917):
>
>> 'Where a person desiring to have his property
>> insured applies not to any particular company or
>> its known agent, but to an insurance broker,
>> permitting him to choose which company shall
>> become the insurer, a long line of decisions has
>> declared the broker to be the agent of the
>> insured; not of the insurer.'

28

Our conclusion is supported by the discussion found in <u>Couch
on Insurance</u>, 2d, Section 25:95:

> 'A broker may be found to have acted on behalf
> of the insurer in negotiations between the latter
> and the insured so as to be deemed the agent of
> the insurer and not the insured * * * but there
> must be some evidence of an authorization, or
> some fact from which a fair inference of an
> authorization by the company might be deduced
> to make an insurance broker the agent of the
> company. * * *'

Here, there was no evidence of authorization by the
companies that Crowe act as their agent.

<u>Taylor v. Crowe</u>, 444 Pa. 471, 475 (1971).

This common-law standard was recently affirmed by the Pennsylvania

Superior Court:

> Pennsylvania courts have typically adhered to the general rule
> in <u>Taylor v. Crowe</u>, concluding that an insurance broker
> unaffiliated with a particular insurance company is not the
> agent of the insurer in the absence of evidence to the contrary.
> <u>See</u>, <u>e.g.</u>, <u>Kairys v. Aetna Casualty and Surety Co.</u>, 314 Pa.
> Super. 502, 461 A.2d 269, 276 (1983) ("We find that Tripp
> was not an agent of Aetna.  This finding is based upon the
> fact that Tripp was not held out as being an 'authorized
> representative' of Aetna and that the appellant did not request
> any particular company where his insurance was to be
> placed."). . . .
>
> In the cases where the broker was found to be the agent of the
> insurer, the insured was able to produce specific evidence to
> support an inference of an agency relationship between the
> broker and the insurer.  In <u>Sands v. Granite Mut. Ins. Co.</u>, 232
> Pa. Super. 70, 331 A.2d 711 (1974), for example, the policy at
> issue in the case identified the broker as an "authorized
> representative" of the insurer. <u>Id.</u> at 715.  The evidence
> further demonstrated that the broker and the insurer had a
> "unique relationship," including the broker's exclusive right
> to set rates for the insurer and to deduct its commissions
> directly from the premiums as it received them.  <u>Id.</u> at 715.
> Based upon the facts of record, we concluded that the broker

29

> "had apparent, if not actual, authority to bind" the insurer.
> Id.; see also Joyner v. Harleysville Ins. Co., 393 Pa. Super.
> 386, 574 A.2d 664, 669 (1990) (where broker was identified
> as the "producer of record" on the application for insurance
> and allowed to collect premiums, the broker had apparent
> authority to collect premiums on behalf of insurer), appeal
> denied, 527 Pa. 587, 588 A.2d 510 (1991).

Regis Ins. Co. v. All American Rathskeller, Inc., 976 A.2d 1157, 1168 (Pa. Super. 2009)

(citations omitted).

Upon my review of all of the exhibits proffered by the trustee in support of

her summary judgment motion, and in opposition to such relief filed by Goodville, I find

no basis to conclude that Hornafius should be treated as Goodville's agent for purpose of

notice of the Hyneses' claim.  There was no evidence that Hornafius was either affiliated

with Goodville or was held out as the latter's authorized representative.  Furthermore,

there was no evidence regarding payment of premiums, or Hornafius' efforts in placement

of insurance for Mr. Snyder.[13]

Absent such a finding of agency, upon which the trustee would have the

evidentiary burden at trial, see generally Fisher v. Aetna Life Insurance & Annuity Co.,

39 F. Supp. 2d 508, 514 (M.D. Pa. 1998), there are no grounds to refute Goodville's

averment that it first learned of the Hyneses' claims against Mr. Snyder in early

November 2008.  Even if the trustee could prove at trial that Hornafius was notified in

August 2008, notice to Hornafius at that time would not constitute notice to Goodville.

---

[13]In the trustee's reply memorandum, she contends that as Hornafius "sold the
policy to Mr. Snyder," as the policy itself permits notice to Goodville or its agent, and as Mr.
Snyder did not testify that Hornafius informed him that it was not Goodville's agent, therefore
Hornafius must be considered Goodville's agent.  Trustee's Reply Memorandum, at 6.  The
contention is unpersuasive.  It is equally likely, as Mr. Snyder stated in his deposition, quoted at
10-11, that Hornafius was Mr. Snyder's "agent."

See Nations First Mortgage, LLC v. Tudor Insurance Co., 2009 WL 3182967, at *8 (M.D. Pa. 2009).

Second, and more significant, even if the trustee had established that she could prove at trial that Hornafius acted as agent for Goodville for purposes of notice, and therefore Goodville in effect knew of the Hyneses' writ of summons against Mr. Snyder in August 2008, the absence of demonstrated prejudice in this proceeding would not change.

Under Pennsylvania law, an insurer's duty to defend its insured "is separate from and broader than the duty to indemnify[.]" General Accident Insurance Co. of America v. Allen, 547 Pa. 693, 706 (1997). Both duties, however, "flow from a determination that the complaint triggers coverage." Id.

> If the complaint against the insured avers facts that would support a recovery covered by the policy, then coverage is triggered and the insurer has a duty to defend until such time that the claim is confined to a recovery that the policy does not cover. The duty to defend also carries with it a conditional obligation to indemnify in the event the insured is held liable for a claim covered by the policy.

Id. Indeed, as the Third Circuit has instructed:

> Pennsylvania law on the question of an insurer's duty to defend its insured is well settled. In consideration for premiums paid, the insurer contractually obligates itself to defend its insured. This obligation arises whenever allegations against the insured state a claim to which the policy potentially applies even if the allegations are "groundless, false or fraudulent."

American Contract Bridge League v. Nationwide Mut. Fire Ins. Co., 752 F.2d 71, 75 (3d Cir. 1985); see, e.g., Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 589 Pa. 317, 329-330 (2006).

31

Thus, when, as here, the liability policy clearly was in force at the time the claims arose, it was reasonable for an insurer to delay sending a reservation of rights letter until the claimant's complaint has been served and the nature of the claims against the insured have been specified.  See United Nat. Specialty Ins. Co. v. Gunboat, Inc., 2006 WL 2627713, at *2 (Pa. Com. Pl. 2006) (insurer "could not determine whether coverage should have been afforded until the close of discovery").  The writ of summons served upon Mr. Snyder did not specify any of the Hyneses' particular claims.  See Shubert ex. D.[14]

Accordingly, for purposes of resolving these cross-motions for summary judgment, the record presented reflects that a reservation of rights letter was issued less than 60 days after the Hyneses filed and served their complaint against Mr. Snyder. After service of the complaint, Mr. Snyder's counsel filed an answer in the state court litigation thereby preventing entry of default judgment against him.

In the context of estoppel against an insurer, imposed because of an untimely reservation of rights letter, Pennsylvania has established the following standard:

> To work an estoppel, there must be such conduct on the part
> of the insurer as would, if the insurer were not estopped,
> operate as a fraud on some party who has taken or neglected
> to take some action to his own prejudice in reliance thereon.
> Accordingly, an insurer is not estopped to deny liability on a
> policy where the plaintiff was not misled by the defendant's
> conduct.  16 Appleman, Insurance Law § 9088 at 626.

---

[14]A writ of summons simply notifies the defendant that a civil action has been commenced, but does not set forth any claims.  See Shubert, ex. D (a copy of the writ of summons issued against Mr. Snyder).  The writ's purpose is to toll the applicable statute of limitations.  See generally Witherspoon v. City of Philadelphia, 564 Pa. 388 (2001); Miller v. Philadelphia Geriatric Center, 2002 WL 1608223, at *9 (E.D. Pa. 2002).

Wasilko v. Home Mutual Casualty Co., 210 Pa. Super. at 328; see, e.g., Insurance Co. of North America v. McCleave, 462 F.2d 587, 588 (3d Cir. 1972); United National Specialty Insurance Co. v. Gunboat, Inc., 2006 WL 2627713, at *2 n.13.  Indeed, "Pennsylvania courts thus impose estoppel 'only when there is actual prejudice, that is when the failure to assert all possible defenses causes the insured to act to his detriment in reliance thereon.'"  Transportation Ins. Co. v. C.F. Bordo, Inc., 2009 WL 839366, at *6 (quoting Rock-Epstein v. Allstate Insurance Co., 2008 WL 4425059, at *4 (E.D. Pa. 2008)).  See also Continental Insurance Co. v. Kovach, 2007 WL 2343771, at *8:

> A party seeking to establish an estoppel must show "an inducement by the party sought to be estopped . . . to the party who asserts the estoppel ... to believe certain facts to exist—and the party asserting the estoppel acts in reliance on that belief." Sabino v. Junio, 441 Pa. 222, 225 . . . (1971).  A determination of whether the insured relied to its detriment on an insurer's conduct requires an analysis of the facts relating to whether the party asserting estoppel has been prejudiced by the conduct of the insurer. . . .  Thus, courts may apply an estoppel only when there is actual prejudice, such as when an insurer's failure to assert all possible defenses in a reservation of rights letter causes an insured to act to his detriment in reliance thereon.

(citations omitted).

Thus, prejudice may be found when, upon the insured's reasonable reliance of insurance coverage, there has been a failure by the insured to assert all possible defenses, see Transportation Ins. Co. v. C.F. Bordo, Inc., 2009 WL 839366, at *6, or a failure to join appropriate parties.  Id.  Prejudice may also be found if counsel engaged by the insurer failed in some manner to provide adequate representation, see generally Titan Indemnity Co. v. Cameron, 2002 WL 242346, at *3, such as a failure to engage in discovery, see generally Rector, Wardens and Vestryman of St. Peter's Church in City of

33

Philadelphia v. American National Fire Ins. Co., 2002 WL 59333, at *8, or a failure to

"conduct a proper investigation or a thorough discovery."  Beckwith Machinery Co. v.

Travelers Indemnity Co., 638 F. Supp. at 1188.  In Rogovitz v. Guiras, 2 Phila. Co. Rptr.

193, 198 (C.P., Phila. Co. 1979), prejudice was found owing to the insurer's failure to

promptly seek to open a default judgment entered against the insured.

Whether the trustee could prove at trial that notice to Goodville was first

provided in August 2008 or, as Goodville asserts, in November 2008, the trustee points to

no evidence in opposing summary judgment that Mr. Snyder was prejudiced in not

receiving a reservation of rights letter prior to January 31, 2009 by, for example, a loss of

defenses or inadequate representation.  Instead, the trustee simply asserts that Mr. Snyder

and the Hyneses reasonably relied upon Goodville's silence after notice of the claims was

provided.  Trustee's Memorandum in Support of Summary Judgment, at 21.  As to

prejudice, she only maintains:

> All the parties, especially Snyder, have been under the
> impression that Goodville was the insurance company who
> would indemnify Snyder.  Snyder has lost substantial rights.
> He has no resources to rehire a lawyer and Goodville is well
> aware of this.  It is seeking Default Judgment against Snyder
> right now.  If it had noticed him of its coverage denial over a
> year ago, as it had a duty to do, then he may not be in this
> prejudicial situation.  Snyder's appointed counsel has already
> indicated that he will not produce Snyder in the Lancaster
> Civil Action.  See Ex. E at 11:22-12:3.  If Goodville obtains a
> Declaratory Judgment, Snyder will not be represented at all.

Trustee's Memorandum in Support of Summary Judgment, at 23-24.

The "prejudice" above-argued by the trustee merely reflects Mr. Snyder's

poor financial condition.  Other than a conclusory statement that Mr. Snyder lost

34

"substantial rights," there is no specification that Mr. Snyder's legal position would be

different had a reservation of rights letter been sent earlier by Goodville.[15]

As for prejudice to the Hyneses, the trustee argues:

> Relying on Snyder's insurance coverage, the Hynes [sic] paid
> over $24,000.00 to their previous counsel to litigate these
> claims with the understanding that Snyder would be insured.
> Then, still operating under that guise, the Hynes' [sic]
> Chapter 7 Trustee appointed this law firm to prosecute the
> claims.  If Goodville somehow escapes liability, the Hynes
> [sic] will lose all hope of recovering any amount after
> reasonably believing Goodville was the indemnitor.  The
> Hynes' [sic] creditors will continue to go unpaid and the
> Hynes family will continue to struggle.  Unfortunately, the
> Hynes will be the real victim of prejudice in this case if
> Goodville has its way.

Trustee's Memorandum in Support of Summary Judgment, at 24.

If the trustee contends that she, or the bankruptcy estate of Hynes, was

prejudiced by a delay in Goodville's notification because she engaged counsel to litigate,

and assuming such prejudice were relevant, the trustee overlooks that she engaged

counsel on a contingency basis only and thus has incurred no out-of-pocket expense.  <u>See</u>

---

[15]In her reply memorandum, the trustee contends that if Mr. Snyder had known
earlier that Goodville would deny coverage, he "could have settled with the Hynes' [sic] or
figured out an alternative course of action rather than lengthy, time-consuming and expensive
litigation."  Trustee's Reply Memorandum, at 7.  But there is no evidence that Mr. Snyder has
incurred any costs connected with the state court litigation; nor that he is now precluded from
settling the litigation with the trustee.

The trustee also suggests that Goodville should be precluded from denying
coverage because Mr. Snyder, according to the trustee's interpretation of his deposition, assumed
that any claim against him arising from his business activities would be covered by his insurance
policy.  Trustees' Memorandum in Support of Summary Judgment, at 24.  Such an argument
involves an analysis of the language of the policy coverage, or possibly representations made by
Hornafius or Goodville at the time the policy was issued.  To the extent these issues are a
component of this declaratory judgment action, I consider them waived by the trustee's
concession that the Hyneses' claims fell outside the scope of the liability policy purchased by Mr.
Snyder from Goodville.

main case docket entry #32, dated December 29, 2008.  If she is arguing that the Hyneses

or their creditors were prejudiced because, without insurance coverage from Goodville,

they will be unable to execute on any judgment issued by the state court in their favor,

such a result may occur in every instance of lack of coverage and does not warrant

imposition of estoppel.  See United Nat. Specialty Ins. Co. v. Gunboat, Inc., 2006 WL

2627713, at *3 (Pa. Com. Pl. 2006):

> Even if the court were to deem prejudice to the party who
> obtained a substantial verdict a factor, in this case Anderson
> has not demonstrated any prejudice by UNSIC's reservation
> of rights except for UNSIC's legitimate refusal to pay.

The trustee also asserts, without affidavits or other corroboration, that the

Hyneses spent significant funds in prosecuting their lawsuit against Mr. Snyder, and

would not have incurred such expenses had they known that Goodville would disclaim

coverage.  This argument founders for a number or reasons:

First, the trustee assumes that such expenditures may constitute prejudice

for which an insurer is responsible and estoppel warranted.  However, in United Nat'l

Specialty Ins. Co. v. Gunboat, Inc., 2006 WL 2627713, at *3 (Pa. Com. Pl. 2006), an

affidavit that a claimant had spent $30,000 in prosecuting the tort action against the

insured was held not to estop the insurer.  The trustee cites no decision applying

Pennsylvania law that grounds estoppel against an insurer based upon litigation expenses

incurred by a claimant.

Second, not only are the Hyneses' alleged expenditures not verified by the

record in these cross-motions, there also is no basis to determine when these alleged

expenditures occurred.  For example, the Hyneses obtained an expert property inspection

report, with cost estimates, in December 2007, see Shubert ex. B, long before a writ of

36

summons was even filed.  Such an expenditure could not have been incurred upon

justifiable reliance that Goodville would indemnify Mr. Snyder.  Indeed, as noted earlier,

until the Hyneses' complaint was filed in September 2008, the precise nature of their

claims were not known or knowable to Goodville.

   Furthermore, there is no basis in the summary judgment record to conclude

that the Hyneses sought discovery from Mr. Snyder regarding his insurance coverage; if

such discovery had been sought, the record is silent as to its date and the information

regarding the existence of insurance, if any, that was obtained from Mr. Snyder.  Absent

such discovery, the earliest that the Hyneses could possibly know of the existence of an

insurance policy in favor of Mr. Snyder would be from the entry of appearance of any

attorney engaged by Goodville.  If I assume (as the record is silent) that attorney

Klingensmith was engaged by Goodville to represent Mr. Snyder, and the Hyneses were

aware of this engagement, this attorney entered his apperance in the state court litigation

on November 5, 2008.

   In Pennsylvania, a finding of estoppel against an insurer should be based

upon "unequivocal evidence" of reasonable reliance upon the existence of insurance for

the claims asserted against the insured.  See, e.g., Transportation Ins. Co. v. C.F. Bordo,

Inc., 2009 WL 839366, at *5.  The trustee has not met her evidentiary burden to

demonstrate that the Hyneses' reasonably believed that Goodville would insure Mr.

Snyder against their claims, and relied upon that belief to thereafter incur $24,000 in expenses.  See generally id., 2009 WL 839366, at *2.[16]

      Accordingly, Goodville is entitled to summary judgment in this declaratory action.  This result renders Goodville's motion to strike Mr. Snyder's statement in support of the trustee's position moot.

      An appropriate order shall be entered.

---

[16]Indeed, between September 25, 2008 when the complaint was filed and January 26, 2009 when trustee's counsel took over the litigation, the docket entries in the state court litigation reflect no hearings or even motions filed.  The only docket entries are Mr. Snyder's answer, notice of intention to take default, and a praecipe to dismiss defendant Biechler.

      Furthermore, as mentioned earlier, the Hyneses had no right to prosecute this litigation after they filed a voluntary chapter 7 bankruptcy petition on September 4, 2008.